UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CLAYTON FENT, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | Case No. 05-CV-0265-CVE-SAJ |
| ) L-3 COMMUNICATIONS AERO TECH ) LLC, et al., ) ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant L-3 Communications Aero Tech LLC's Motion to Dismiss Plaintiff's Complaint and Brief in Support Thereof (Dkt. # 42). Relator Clayton Fent ("Fent") filed the instant qui tam action, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-3732 ("FCA"), and wrongful termination under Oklahoma law. Dkt. # 2, at 8-10. Defendant L-3 Communications Aero Tech LLC now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). For the reasons set forth below, the Court finds that the motion to dismiss should be **granted** in part and **denied** in part.

**I.**

Defendant, formerly known as Raytheon Aerospace, LLC,[1] entered into a service contract with the United States Department of Air Force ("United States") to maintain and repair various equipment located abroad. Dkt. # 2, at 4. Pursuant to this contract, the United States reimbursed

---

[1] L-3 Communications Aero Tech, LLC purchased Raytheon Aerospace, LLC during 2005. Dkt. # 42, at 2 n.1. The conduct alleged in the complaint occurred prior to the acquisition. Id.

defendant for per diem payments made to employees working under the contract.[2]  Id.  In 2002, defendant received a contract delivery order to service and repair military helicopters in the Middle East and Southwest Asia.  Id.  Defendant sent employees, including Fent, to Kuwait to fulfill its delivery order obligations.  Id.

Fent worked for defendant from February 22, 2000 until his termination on May 16, 2003.  Id. at 3.  On March 1, 2003, Fent departed for Kuwait.  Id. at 4.  As an administrative aide, Fent's job duties included "completing and ensuring the accuracy of payroll, per diem reimbursements, employee insurance forms, employee income tax submissions, leave of absence applications, accident reports, and other personnel related submissions."  Id. at 4, 7.  On a weekly basis, Fent submitted to defendant's payroll department a report reflecting the amount of per diem reimbursement due to each employee.  Id. at 5.  In this report, Fent recorded for each eligible employee the proper site code, delivery order code, and number of days worked during a given week.  Id.  Based on the codes contained in Fent's report, the payroll department issued payments to the specified employees.  Id.  Fent did not, however, "in the normal course of his job duties, have opportunities from week to week to view" the employees' checks."  Id. After distribution of these checks, defendant then submitted reimbursement requests to the United States.  Id.

On May 12, 2003, Fent met with Jack Holland, the operations manager.  Id. at 6.  During this meeting, Fent viewed per diem checks to be issued to employees for the week of April 29, 2003.  Id.  Fent claims that the checks "reflected site codes and delivery order codes different from" those he reported for that week.  Id.  Fent likewise claims that, while in Kuwait, he "learned that checks

---

[2]    The United States also awarded defendant extra "fees" if it exceeded certain performance and cost targets.  Id.

2

reimbursing employee per diem for weeks prior to April 29, 2003 also reflected incorrect site codes and delivery order codes." Id. (emphasis in original). Accordingly, he notified the operations manager and contract field manager of the apparent mistake. Id. Fent alleges that the managers told him "that so long as the employees were being reimbursed for the proper per diem amounts, Fent need not worry that the site codes and delivery order codes appearing on the checks were incorrect." Id. Fent avers that he informed the managers of his belief that defendant was perpetrating a fraud upon the United States. Id. Later that same day, the operations manager allegedly told Fent to omit site codes and delivery order codes from his report from that point forward. Id.

The following day, Fent chose not to alter his reporting method. Id. Fent asserts that the operations manager "discovered Fent's disobedience and angrily demanded" that Fent resubmit a report, omitting site codes and delivery order codes. Id. Fent refused and told the operations manager that he intended to report defendant's fraud to the proper governmental authorities. Id. at 7. The operations manager "immediately suspended Fent pending termination." Id. Fent alleges that on May 14, 2003, the operations manager drafted a memorandum containing the following language: "I found out later Mr. Fent was interfering with employees [by] working to get statements to back up his future claims and that he was going to file law suit against Raytheon for fraud and anything else he could think of." Id. (alteration in original). Defendant terminated Fent two days later. Id.

Fent claims he subsequently discovered that "his own and the services of others were misclassified while they were working" for defendant abroad. Id. Fent asserts that defendant fraudulently classified him as a mechanic, as opposed to an administrative aide, to profit from the

3

pay differential. Id. According to Fent, defendant "was manipulating job and site codes for the purpose of obtaining funds to which it would not have been otherwise entitled." Id.

## II.

The FCA authorizes private citizens to bring actions on behalf of the United States. 31 U.S.C. § 3730(b). These actions are known as qui tam actions, with the private citizen or "relator" acting "for the person and for the U.S. government against the alleged false claimant." United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 706 n.3 (10th Cir. 2006) (quoting Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 768 (2000)) (internal quotation marks omitted). The United States must have an opportunity to intervene before the relator may serve the unsealed complaint on a defendant. See 31 U.S.C. § 3730(b)(2). Here, the United States declined to intervene, and so Fent was permitted to proceed with this action.[3] See id. § 3730(b)(4).

As the relator, Fent asserts two claims against defendant on behalf of the United States. He also asserts two personal claims for retaliation and wrongful termination. In Count One, Fent alleges that defendant and several of its employees conspired to defraud the United States for the purpose of having false or fraudulent claims paid or allowed in violation of 31 U.S.C. § 3729(a)(3). Dkt. # 2, at 8. In Count Two, Fent alleges that defendant knowingly submitted false and fraudulent claims for payment to an agent for the United States in violation of 31 U.S.C. § 3729(a)(1). Id. at 8-9. In Count Three, Fent alleges that his suspension and termination were retaliatory in violation of 31

---

[3]   If Fent is ultimately successful, he will be entitled to up to 30% of the funds the United States recovers. See id. § 3730(d)(2).

4

U.S.C. § 3730(h). Id. at 9. Finally, in Count Four, Fent alleges wrongful termination in violation of Oklahoma public policy. Id. at 10.

Defendant moves to dismiss Fent's complaint pursuant to Rule 12(b)(6). Defendant argues that Fent has failed to allege even a single false claim, and thus Counts I and II must be dismissed under Rule 12(b)(6) and Rule 9(b). Dkt. # 42, at 1. Fent's conspiracy claim in Count I likewise is barred by the intracorporate conspiracy doctrine. Id. Defendant further argues that Count III fails to state a claim upon which relief may be granted, because Fent fails to allege that he was acting in furtherance of a valid FCA suit prior to his termination. Id. at 2. Lastly, defendant claims that Count IV is legally deficient, as it fails to allege a violation of established Oklahoma public policy. Dkt. # 63, at 2.

### III.

A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The factual allegations within the complaint "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature.

Erikson v. Pawnee County Bd. of County Comm'rs., 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellman, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### A. Counts I and II: Conspiracy and Presentation of False Claims

In addition to satisfying Rule 12(b)(6), FCA fraud claims must be pled with particularity as required by Rule 9(b).[4] United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1308-09 (11th Cir. 2002), cited with approval in Sikkenga, 472 F.3d at 715 n.19, 727. A relator may not base his FCA claims on mere speculation and conclusory allegations. Sikkenga, 472 F.3d at 728 (internal quotation marks and citation omitted). As noted by the Tenth Circuit, "[a] special relaxing of Rule 9(b) is a qui tam plaintiff's ticket to the discovery process that the statute itself does not contemplate." United States ex rel. Schwartz v. Coastal Healthcare Group, Inc., 232 F.3d 902, 2000 WL 1595976, at *4 (10th Cir. Oct. 26, 2000) (quoting United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999)) (internal quotation marks omitted).[5] Thus, Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."

---

[4] The FCA imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). The FCA also imposes liability on any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." Id. § 3729(a)(2).

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

Addressing Count II first (presentation of false claims), to satisfy Rule 9(b)'s particularity requirement, a relator must proffer "details that identify particular false claims for payment that were submitted to the government." Sikkenga, 472 F.3d at 727 (quoting United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 232-33 (1st Cir. 2004)) (internal quotation marks omitted). "At a minimum, Rule 9(b) requires that a [relator] set forth the who, what, when, where, and how of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Id. at 726-27 (internal quotation marks and citations omitted). More specifically, these details may include: (i) the dates of the false claims, (ii) the content and identification numbers of the forms or the bills submitted, (iii) the fees charged to the government, (iv) the goods and services for which the government was billed, (v) the persons involved in the billing, and (vi) the length of time between the alleged fraudulent practices and the submission of the claims based on those practices. Id. at 727 (citation omitted). Nevertheless, "if all the factual allegations do not support a conclusion that a 'false or fraudulent claim' was made, the case may not proceed under the FCA." United States ex rel. Morton v. A Plus Benefits, Inc., 139 Fed. Appx. 980, 2005 WL 1672221, at *2-3 (10th Cir. July 19, 2005) (quoting United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1018 (7th Cir. 1999)); see Sikkenga, 472 F.3d at 727-28 (holding that a relator must do more than simply allege that the defendant must have submitted, likely submitted, or should have submitted false claims under a particularly described private scheme).

Here, Fent has failed to allege even one false claim submitted by defendant to the United States. Based on personal knowledge, Fent asserts that the per diem employee checks issued for the week of April 29, 2003 "reflected site codes and delivery order codes different from" those he

reported for that week. Dkt. # 2, at 6. Fent further asserts that while in Kuwait, he "learned that checks reimbursing employee per diem for weeks prior to April 29, 2003 also reflected incorrect site codes and delivery order codes." Id. (emphasis in original). Fent claims he subsequently discovered that "his own and the services of others were misclassified while they were working" for defendant abroad. Id. at 7. According to Fent, defendant "was manipulating job and site codes for the purpose of obtaining funds to which it would not have been otherwise entitled." Id.

Even if Fent has "stated with particularity the circumstances comprising the elements of the alleged scheme to defraud, his complaint 'fail[s] to meet the minimum pleading requirements for the actual presentment of any false claims.'" United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1358 (10th Cir. 2006) (quoting Clausen, 290 F.3d at 1315) (emphasis added in original); see United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., ___ F.3d ___, 2007 WL 2492439, at *7 (6th Cir. Sept. 6, 2007) ("We hold that pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a violation in compliance with Rule 9(b)."). Fent fails to specify: (i) the particular date on which false claims were submitted to the government; (ii) the content and identification numbers of these submitted false claims; (iii) the amount of fees defendant fraudulently charged to the government; (iv) the goods and services for which the government was billed; (v) the persons involved in these billings; and (vi) the length of time between the alleged fraudulent upcoding and the submission of the claims based on these practices. Moreover, not one description or copy of a single reimbursement request or payment has been provided. While Fent's complaint need not allege all of the above details, "some of this information, for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." Sikkenga, 472 F.3d at 728 (internal quotation marks and citation omitted). Fent must allege more than a scheme wherein

defendant must have submitted, likely submitted, or should have submitted false claims. See Schwartz, 2007 WL 1595976, at *6 ("Without citing a single false claim arising from an allegedly false invoice, [r]elator has not met even a bare-bones Rule 9(b) test."). Consequently, Count II fails to state a claim upon which relief may be granted.

With regard to Count I, a defendant cannot conspire to submit a false claim if no false claim has been shown to exist. United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 459 F. Supp. 2d 1081, 1091 (D. Kan. 2006). Thus Count I similarly fails as a matter of law. Notwithstanding this conclusion, the Court notes defendant's other argument: Fent's conspiracy claim in Count I is barred by the intracorporate conspiracy doctrine. Although this doctrine has yet to be adopted by the Tenth Circuit in an FCA case, the doctrine provides that a corporation's employees, acting as agents of the corporation, cannot conspire with the corporation. Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994). The acts of the employee-agents are deemed to be those of a single legal entity — the corporation. As a conspiracy requires two or more actors, a single legal entity, such as a corporation and its employees, cannot conspire with itself. Dickerson v. Alachua County Comm'n., 200 F.3d 761, 767 (11th Cir. 2000); see United States ex rel. Bartlett v. Tyrone Hosp., Inc., 234 F.R.D. 113, 128 (W.D. Pa. 2006) (holding that the intracorporate conspiracy doctrine legally prohibits a conspiracy between an agent and its principal); United States ex rel. DRC, Inc. v. Custur Battles, LLC, 376 F. Supp. 2d 617, 651-52 (E.D. Va. 2005) (finding that a corporation cannot conspire with its own officers to submit false claims to the government).

The Court agrees with defendant. Defendant and its employees could not conspire to present false claims to the United States. According to the complaint, the employees were acting as agents

9

for defendant. Moreover, Fent does not even address this issue in his response. Count I thus fails to state a conspiracy claim.

Accordingly, the Court finds that Counts I and II should be dismissed without prejudice to the filing of an amended complaint. The Court advises relator that he must plead sufficient detail, as described above, with regard to any alleged conspiracy or presentation of false claims.[6]

### B. Count III: Retaliatory Adverse Employment Action

In Count III, Fent claims that he was suspended and terminated in retaliation for his: (i) notification to managers that defendant was perpetrating a fraud; (ii) refusal to omit the site and delivery order codes from his report; (iii) advice to the operations manager that he intended to report defendant's acts to a proper governmental authority; and (iv) undertaking to document defendant's fraud in anticipation of a future FCA action. Dkt. # 2, at 9. Defendant responds that Fent has failed to state a retaliation claim under Rule 12(b)(6). Fent "fails to allege facts sufficient to demonstrate that he was investigating matters that reasonably could have led to a viable FCA action." Dkt. # 42, at 9.

The FCA reads in part:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an [FCA] action . . . shall be entitled to all relief necessary to make the employee whole.

---

[6] The Court notes that Fent misinterprets Rule 9(b) in his response. See Dkt. # 58, at 1-2, 5. The Tenth Circuit has clearly set forth a particularity standard with regard to FCA claims. Any amended complaint must comply with this standard.

10

31 U.S.C. § 3730(h). Congress intended § 3730(h) to provide relief "only if the whistleblower can show by a preponderance of the evidence that the employer's retaliatory actions resulted 'because' of the whistleblower's participation in a protected activity." S. Rep. No. 99-345, at 35 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266, 5300. Thus, to state a claim of retaliatory adverse employment action under § 3730(h), the Tenth Circuit requires an employee to plead two elements: (1) the employee acted in furtherance of suit under the FCA, of which the employer had notice; and (2) the employee suffered adverse employment action because of this protected conduct. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1522 (10th Cir. 1996); see Sikkenga, 472 F.3d at 729; Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 186 (3d Cir. 2001). An individual does not actually have to file a qui tam action, however, to maintain a § 3730(h) claim.[7] Ramseyer, 90 F.3d at 1522.

With respect to the first element, which is the only element presently at issue in this case, the Tenth Circuit has held that an "action in furtherance of" — or protected conduct — must consist of more than an employee's notification to superiors of defendant's noncompliance with the minimum requirements of a Federal program. Ramseyer, 90 F.3d at 1523. Ramseyer intimates that certain actions may qualify as "an 'investigation' sufficient to put defendant[] on notice." Id. at

---

[7]   Defendant argues that an employee must establish that "he was 'investigating matters that reasonably could lead to a viable False Claims Act case' to allege protected conduct. Dkt. # 63, at 5 (quoting United States ex rel. Brooks v. Lockheed Martin Corp., 423 F. Supp. 2d 522, 530 (D. Md. 2006)) (emphasis added). Yet this argument ignores the context of this quote. Brooks was discussing the employee's failure to allege "the necessary relationship between [his allegations] and a false claim or fraudulent activity." 423 F. Supp. 2d at 530-31. The Brooks court did not hinge its decision on the viability of any submitted false claim. See id. The court concluded that the "conduct he reported was too attenuated from any possible FCA violation for this Court to hold that Brooks made these reports 'in furtherance of' an FCA action, as required by § 3730(h)." Id. at 531 (emphasis added).

1522-23. These actions include an employee's notice to defendant that: (1) he intended to "utilize the [alleged misconduct] in furtherance of an FCA action"; (2) he "was going to report such [misconduct] to government officials"; and (3) he "was contemplating [his] own qui tam action."[8] Id. Further, an employee must allege that he acted beyond the scope of his job duties. Id. He must demonstrate that he took steps to alert defendant that he was "acting 'in furtherance of' an FCA action — e.g., that []he was furthering or intending to further an FCA action rather than merely warning the defendant[] of the consequences of [its] conduct." Id. Simply "grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the [notice] requirement — just as it does not constitute protected conduct in the first place." United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 743 (D.C. Cir. 1998).

Here, in deciding whether to grant a motion to dismiss, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to Fent. Fent supports his claims with several factual allegations. He avers that he refused to omit the site and delivery order codes from his report as instructed by his operations manager. Dkt. # 6-7. He alleges that he told his operations manager that he intended to report defendant's fraudulent upcoding to the proper governmental authorities. Id. at 7. Fent asserts that in response, the operations manager "immediately suspended" him pending Fent's termination two days later. Id. Moreover, Fent proffers language from an alleged internal memorandum — a memorandum that defendant does not deny — in which the operations manager states "Fent was interfering with

---

[8] Ramseyer did not distinguish between the protected conduct and notice elements. Although the Court agrees with defendant that a prima facie case of retaliation actually consists of three prongs, i.e., protected conduct, notice, and resulting adverse employment action, the Tenth Circuit does not draw a clear distinction between protected conduct and notice.

employees [by] working to get statements to back up his future claims and that he was going to file law suit against Raytheon for fraud and anything else he could think of." Id. (alteration in original). In light of these allegations, the Court finds that Fent's complaint states an "investigation" sufficient to put defendant on notice. Fent satisfies two of the three Ramseyer factors. He pleads that: (1) he informed his supervisor of his intention to utilize the alleged upcoding in furtherance of a fraud action; and (2) he told his supervisor that he was going to report such upcoding to government officials.

Nevertheless, defendant argues that Fent admitted that his job responsibilities included "completing and ensuring the accuracy" of payroll and per diem reimbursements. Dkt. # 2, at 4. Thus, according to defendant, Fent was acting within the scope of his job duties when he discovered and reported the alleged upcoding. The Court disagrees. Fent alleges that he had a duty to complete only the weekly payroll report. See Dkt. # 2, at 5. Fent avers that he did not, "in the normal course of his job duties, have opportunities from week to week to view" the employees' checks. Id. Fent clearly pleads that his job responsibilities ended with his report. The payroll department — not Fent — had the responsibility of issuing employees' checks, for which defendant later sought reimbursement.

At this stage in the proceedings, the Court must accept all well-pleaded allegations as true. Fent has adequately stated a claim and supported it with facts consistent with his allegations. Accordingly, defendant's motion to dismiss Count III should be denied.

### C. Count IV: Wrongful Termination

In Count IV, Fent avers that defendant discharged him because he "refused to collude and conspire with others to defraud the U.S. government." Dkt. # 2, at 10. Fent claims that he was

wrongfully terminated in violation of public policy. Id. In his response, Fent clarifies this claim. He alleges that defendant terminated him in violation of the established public policy set forth in the Oklahoma false pretenses criminal statute.[9] See OKLA. STAT. tit. 21, § 1542(A). Defendant responds that because Fent has failed to plead even one submitted false claim, he cannot establish any of the required elements of a § 1542(A) false pretenses offense.[10] Dkt. # 63, at 8-9.

As noted by Fent himself, Fent fails to allege a violation of OKLA. STAT. tit. 21, § 1542(A) in his complaint. He asks the Court to permit amendment. In deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the "allegations contained within the four corners of the complaint." Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995); see Sikkenga, 472 F.3d at 731 n.37. Thus, the Court may not consider these new allegations without a properly amended complaint. Generally, the Court would dismiss Count IV without prejudice. The Court finds, however, that even if Fent were to subsequently amend Count IV to include § 1542(A), Fent's wrongful termination claim

---

[9] Section 1542(A) of Title 21 of the Oklahoma Statutes provides: "Every person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable . . . ."

[10] "To constitute the crime of obtaining property under false pretenses the essential elements are: A false statement of past or existing facts by one person to another with intent to defraud; such statement must be reasonably calculated to deceive that other. It must be so designed as to induce such other to part with his property, and such design must be accomplished, by means of the false pretenses made use of for that purpose." State v. Layman, 357 P.2d 1022, 1028 (Okla. Crim. App. 1960), overruled on other grounds, Broadway v. Oklahoma, 818 P.2d 1253, 1255 n.1 (Okla. Crim. App. 1991) (internal quotation marks omitted).

would still fail as a matter of law. Fent has an adequate statutory remedy under the FCA, thereby precluding his common law claim.[11]

The Oklahoma Supreme Court has repeatedly held that "the public policy exception only applies 'in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory, or decisional law.'" Shaw v. AAA Eng'g & Drafting, Inc., 213 F.3d 519, 535 (10th Cir. 2000) (quoting Burk v. K-Mart Corp., 770 P.2d 24, 28 (Okla. 1989)); see Shero v. Grand Savings Bank, 161 P.3d 298, 300 (Okla. 2007); Griffin v. Mullinix, 947 P.2d 177, 178 (Okla. 1997); Barker v. State Ins. Fund, 40 P.3d 463, 470 (Okla. 2001); Hayes v. Eateries, Inc., 905 P.2d 778, 785 (Okla. 1995). "When a statutory remedy adequately accomplishes the goal of protecting Oklahoma public policy, [moreover,] a common law remedy is not needed." Clinton v. State ex rel. Logan County Election Bd., 29 P.3d 543, 546 (Okla. 2001). The "existence of a federal statutory remedy is sufficient to protect Oklahoma public policy" and thereby precludes "the creation of an independent common law claim based on a public policy exception to the employment-at-will doctrine." Id. The determination of the adequacy of the statutory remedy is a question of law to be resolved by the courts. Id.

Here, Fent claims defendant discharged him because he "refused to collude and conspire with others to defraud the U.S. government." Dkt. # 2, at 10. While Fent cites the Oklahoma false pretenses statute as articulating the "well-established public policy," he seeks relief for his discharge under the FCA. Regardless of whether Fent has or can "identify an Oklahoma public policy goal that is clear, [] compelling," and set forth in § 1542(A), Clinton, 29 P.3d at 546, the fact remains that

---

[11] The Court notes that in Shaw, the Tenth Circuit determined that terminating an employee in retaliation for general whistleblowing does not offend Oklahoma public policy. 213 F.3d at 535-36; see Burk v. K Mart Corp., 956 F.2d 213, 214 (10th Cir. 1992).

Fent already has an adequate statutory remedy. Therefore, Fent may not seek this common law claim. The Court finds that Fent's fourth cause of action should be dismissed.

### III.

In conclusion, the Court finds that Fent has failed to plead that defendant submitted even one false claim to the United States. The Court dismisses Counts I and II without prejudice to filing an amended complaint. The Court also concludes that Fent has alleged sufficient facts to state a claim for retaliatory adverse employment action under the FCA. Defendant's motion to dismiss is hereby denied with respect to Count III. Finally, the Court determines that Fent has failed to state a common law claim for wrongful termination, warranting the Court's dismissal of Count IV with prejudice.

**IT IS THEREFORE ORDERED** that Defendant L-3 Communications Aero Tech LLC's Motion to Dismiss Plaintiff's Complaint and Brief in Support Thereof (Dkt. # 42) is **granted** with respect to Counts I, II, and IV and **denied** with respect to Count III. If plaintiff wishes to amend his False Claims Act claims as to this defendant, he must do so no later than **November 22, 2007.**

**DATED** this 2nd day of November, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT